Bridget Psarianos (AK Bar No. 1705025)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
121 W. Fireweed Lane, Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
bpsarianos@trustees.org
jcahoon@trustees.org

*Attorneys for Movant Intervenor-
Defendants Northern Alaska Environmental
Center and Alaska Wilderness League*

Barbara Chillcott (MT Bar No. 8078)
(*pro hac vice* pending)
WESTERN ENVIRONMENTAL LAW CENTER
103 Reeder's Alley
Helena, MT 59601
(406) 430-3023
chillcott@westernlaw.org

David Woodsmall (OR Bar No. 240631)
(*pro hac vice* pending)
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Blvd., Suite 340
Eugene, OR 97401
(971) 285-3632
woodsmall@westernlaw.org

*Attorneys for Movant Intervenor-
Defendants Badlands Conservation
Alliance, Center for Biological Diversity,
Citizens for a Healthy Community, Diné
Citizens Against Ruining Our Environment,
San Juan Citizens Alliance, Sierra Club,
and WildEarth Guardians*

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 1 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 1 of 25

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

                    Plaintiff,

        v.

DEB HAALAND, in her official capacity as
Secretary of the Interior,
*et al.*,

                    Defendants.

Case No. 3:24-cv-00161-SLG

---

**MOTION TO INTERVENE BY NORTHERN ALASKA ENVIRONMENTAL
CENTER, ALASKA WILDERNESS LEAGUE, BADLANDS CONSERVATION
ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, CITIZENS FOR A
HEALTHY COMMUNITY, DINÉ CITIZENS AGAINST RUINING OUR
ENVIRONMENT, SAN JUAN CITIZENS ALLIANCE, SIERRA CLUB, and
WILDEARTH GUARDIANS
(Fed. R. Civ. P. 24)**

Pursuant to Federal Rule of Civil Procedure 24(a)(2) and (b), the Northern Alaska

Environmental Center (Northern Center), Alaska Wilderness League, Badlands

Conservation Alliance, Center for Biological Diversity, Citizens for a Healthy

Community, Diné Citizens Against Ruining our Environment, San Juan Citizens

Alliance, Sierra Club, and WildEarth Guardians (collectively, "Northern Center

Movants") move to intervene as defendants in this litigation challenging the U.S. Bureau

of Land Management's (BLM) adoption of regulations governing management of BLM-

administered public lands, commonly known and hereinafter referred to as the "Public

Lands Rule." Conservation and Landscape Health: Final Rule, 89 Fed. Reg. 40,308 (May 9, 2024).

The undersigned counsel have conferred with Plaintiff and the Federal Defendants about this motion. Plaintiff reserves its position on this motion. Federal Defendants take no position.

<u>INTRODUCTION</u>

Northern Center Movants value federal public lands as a cornerstone of the ecology, economy, and communities in the western U.S. and Alaska. BLM's Public Lands Rule clarifies that conservation is a use on par with other authorized uses of federal public lands. It also recognizes Federal Defendants are responsible under the Federal Land Policy and Management Act of 1976 (FLPMA) for "prioritizing the health and resilience of ecosystems across public lands." 89 Fed. Reg. at 40,308. In this case, Plaintiff State of Alaska (Plaintiff) not only challenges and seeks to invalidate the Public Lands Rule; it challenges Federal Defendants' fundamental authority to consider conservation in managing federal public lands under FLPMA, the Alaska National Interest Lands Conservation Act (ANILCA), and the Naval Petroleum Reserves Production Act (Reserves Act). The relief sought by Plaintiff would profoundly alter the structure of federal public lands management under BLM's existing mandates. These conservation values are cherished by Northern Center Movants and their members.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                        Page 3 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 3 of 25

Northern Center Movants seek to intervene under Federal Rule of Civil Procedure 24(a)(2) and meet all the requirements to intervene as of right. First, this motion is timely, coming at the early stages of litigation and not causing prejudice to any party. Second, Northern Center Movants have a significant interest in defending the Public Lands Rule and BLM's long-standing authority to manage public lands for conservation. They have individually and collectively worked for decades to protect public lands, waters, and vulnerable communities from the negative impacts resulting from Federal Defendants' historic subordination of conservation interests to extractive and consumptive uses. Third, this action may impair Northern Center Movants' interests as they stand to lose significant ground in advancing their missions to conserve public lands and secure the associated public health, cultural resource, air and water quality, wildlife, recreation, and climate safeguards their members depend on if the Plaintiff obtains the relief requested. Finally, Northern Center Movants' interests are not adequately represented by Federal Defendants because Federal Defendants are charged with balancing all authorized uses of federal public lands for the public as a whole. Accordingly, this Court should grant their motion for intervention as of right.

In the alternative, Northern Center Movants satisfy the test for permissive intervention under Federal Rule of Civil Procedure 24(b) because the motion is timely, and Movants raise questions of law and fact in common with the underlying litigation.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 4 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 4 of 25

BLM manages 245 million acres of public lands, nearly 10 percent of the land in the United States. 89 Fed. Reg. at 40,309. As BLM noted in the preamble to the Public Lands Rule, "[t]hese lands have become increasingly degraded in recent decades through the appearance of invasive species, extreme wildfire events, prolonged drought, and increased habitat fragmentation." *Id*. BLM appropriately acknowledges in the Public Lands Rule that "[e]stablishing and safeguarding resilient ecosystems has become imperative as the public lands experience adverse impacts of climate change and as BLM works to ensure public lands and ecosystem services benefit human communities." *Id*. at 40,308.

Despite decades of management imbalance, public lands still hold great potential for fulfilling FLPMA's promise of conservation – one of BLM's core mandates. Northern Center Movants have advocated for BLM to adopt comprehensive regulations implementing this promise because they know that:

> Connected landscapes contribute to the delivery of ecosystem services, such as water purification, soil fertility, and carbon sequestration. These services benefit both wildlife and human communities, support agricultural productivity, clean water supply, and climate regulation. Healthy, resilient ecosystems are better able to withstand and adapt to environmental changes, such as climate variability, wildfires, and invasive species introductions ….

Rader Decl. ¶ 12.

FLPMA provides BLM with ample authority, and indeed the obligation, to manage public lands for conservation. The statute directs Interior to manage federal

public lands and resources pursuant to a "multiple use" and "sustained yield" approach, which requires a "delicate balancing" of competing uses. *N. M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 710 (10th Cir. 2009) (citation omitted). Under the broad rubric of "multiple use," BLM is charged with the responsibility to manage public lands and resources to "meet the present and future needs of the American people" while "conform[ing] to changing needs and conditions . . . tak[ing] into account the long-term needs of future generations." 43 U.S.C § 1702(c). Ultimately, the multiple use mandate underpins the agency's stewardship responsibility to pursue the "harmonious and coordinated management of the various resources without permanent impairment of the productivity of the land and the quality of the environment." *Id*. This long-sighted directive is also reflected in a "sustained yield" mandate that obligates BLM to take the long view and satisfy the multiple use mandate "in perpetuity." 43 U.S.C. § 1702(h).

Conservation – now and for future generations – is at the heart of these mandates. In managing public lands for multiple use and sustained yield, FLPMA expressly requires:

> the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use.

43 U.S.C. § 1701(a)(8). BLM thus holds the responsibility and authority to conserve public lands in the public interest. BLM serves as a trustee of public lands and the rich sweep of ecological, environmental, and other resource values these lands hold.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 6 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 6 of 25

In Alaska, BLM must comply with additional legal mandates when managing the 70 million acres of public lands within the State. For instance, Congress enacted ANILCA for the dual purposes of conservation and protecting subsistence on public lands. 16 U.S.C. §§ 3101(a)–(c), 3111–3112, 3120(a). To help achieve these goals, under ANILCA Section 810, if BLM is considering an action to withdraw, lease, or otherwise allow the use, occupancy, or disposition of public land, it is required to go through a number of steps to determine the proposed action's impact on subsistence uses and it has substantive obligations to avoid or minimize those impacts. *Id.* § 3120. Additionally, the Reserves Act—applicable to the roughly 22 million acres of BLM-managed lands in the National Petroleum Reserve-Alaska (Reserve)—directs BLM to carry out an oil and gas leasing program, while also mandating that BLM adopt mitigation measures to protect the ecological and other values of the Reserve. 42 U.S.C. §§ 6503(b), 6504(a), 6506a(a)–(b). These statutes, along with FLPMA and other laws, guide BLM's management of Alaska's vast public lands and require the agency to protect the state's unique resources and the people and communities who rely on them.

While BLM has always considered conservation within its purview, until now the agency has not promulgated rules interpreting and administering FLPMA's conservation-focused authorities for the public lands is administers as a whole. This has been problematic considering the agency's non-discretionary duties to manage public lands "without permanent impairment" and to "prevent unnecessary or undue degradation." This is also in contrast to BLM's promulgation of extensive rules governing extractive

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 7 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 7 of 25

uses. For example, BLM has promulgated rules implementing the Mineral Leasing Act's oil and gas leasing and permitting directives.[1] Those rules, coupled with the absence of broad FLPMA conservation rules, created an asymmetry in BLM's planning and management framework that has favored extractive and consumptive uses at the expense of other public resource values. In other words, while BLM has advanced conservation on public lands, it has nevertheless lacked sufficient tools to strike the "delicate balance" required by FLPMA's multiple use-sustained yield mandate, leading to degraded ecosystems on public lands. *Richardson*, 565 F.3d at 710 (FLPMA does not require development or other uses to "be accommodated on every piece of land; rather, delicate balancing is required.").

The Public Lands Rule will facilitate BLM's ability to strike the delicate balance FLPMA requires. It accomplishes this through several regulatory tools to advance ecosystem resilience and carry out BLM's multiple use and sustained yield mandates on public lands. The Rule's core tools include: a restoration and mitigation leasing program that will allow entities to restore public lands or mitigate reasonably foreseeable impacts from authorized activities; a framework for land health and related standards and guidelines for all BLM-managed lands; a focus on protecting and restoring intact landscapes; clarifying the Areas of Critical Environmental Concern ("ACEC")

---

[1] *See* 43 C.F.R. Subt. B, Ch. II, Subch. C, Part 3100 (general oil and gas leasing rules), Part 3110 (noncompetitive oil and gas leasing rules), Part 3120 (competitive oil and gas leasing rules), Part 3150 (oil and gas geophysical exploration rules), Part 3160 (oil and gas operations rules), and Part 3170 (oil and gas production measurement and waste rules).

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 8 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 8 of 25

designation and management process; and adopting a mitigation hierarchy for impacts to BLM lands. *See generally,* 89 Fed. Reg. 40,308–49.

ARGUMENT

## I. NORTHERN CENTER MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

This Court applies a four-part test to determine whether intervention as of right is warranted under Rule 24(a)(2), which considers: (1) the timeliness of the motion, (2) whether "the applicant has a significant protectable interest relating to the property or transaction" at issue, (3) whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest," and (4) whether "existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted). Courts are "guided primarily by practical and equitable considerations" and apply the requirements broadly in favor of intervention. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted). As the Ninth Circuit has explained, a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. Cty. of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)). Indeed, intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene       Page 9 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG  Document 18  Filed 09/30/24  Page 9 of 25

694, 700 (D.C. Cir. 1967)). Northern Center Movants satisfy all four elements to intervene as a matter of right.

## A.     Northern Center Movants' Motion Is Timely.

The timeliness of a motion to intervene is measured by considering "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at 921 (citation omitted). A motion to intervene is timely when made at the early stages of the proceedings. *Citizens for Balanced Use*, 647 F.3d at 897.

Northern Center Movants easily satisfy the timeliness standard as this matter is still in its infancy, and there has been no delay in application for intervention. Plaintiff filed this suit on July 24, 2024, and this case has not substantively progressed since that time. ECF No. 1. Federal Defendants only recently filed their answer, there is no briefing schedule currently in place, no substantive motions have been filed, nor has the administrative record been lodged. Accordingly, no parties will be prejudiced by Northern Center Movants' intervention. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (noting parties not prejudiced because motion to intervene filed before any substantive rulings).

## B.     Northern Center Movants Have a Significant Protectable Interest in the Public Lands Rule.

The requirement that a movant show a protectable interest is met when "(1) the applicant asserts an interest that is protected under some law, and (2) there is a

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 10 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 10 of 25

relationship between the applicant's legally protected interest and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (cleaned up) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). Movants are not required to establish a specific legal or equitable interest. *Nw. Forest Res. Council*, 82 F.3d at 837. The focus of this inquiry is on the "property or transaction that is the subject of the lawsuit," not "the underlying legal claim." *Wilderness Soc'y*, 630 F.3d at 1178. An applicant generally demonstrates a protectable interest if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal. ex. rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly*, 159 F.3d at 410 (explaining an interest is related to the action when "resolution of the plaintiff's claims actually will affect the applicant"). Protection of an area's wilderness values, wildlife, and habitat are recognized as protected interests for purposes of intervention. *Citizens for Balanced Use*, 647 F.3d at 897–98; *United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992).

Here, Northern Center Movants have significant interests in the Public Lands Rule and BLM's long-standing FLPMA authority to consider conservation in its management of public lands. Northern Center Movants include community, conservation, and Tribal organizations dedicated to protecting public lands. Northern Center Movants and their members live, work, and recreate on public lands in Alaska and across the western U.S. DeAngelis Decl. ¶¶ 6-10; Joyce Decl. ¶¶ 6, 16-17; Krupp Decl. ¶ 13; Léger Decl. ¶ 3;

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 11 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 11 of 25

McKinnon Decl. ¶ 7; Pinto Decl. ¶¶ 3, 6; Rader Decl. ¶¶ 8, 15-21; Straight Decl. ¶¶ 5, 14; Moderow Decl. ¶ 27; Dabney Decl. ¶¶ 25, 30. They include community-based organizations founded to respond to the disproportionate impacts of public lands resource development on local residents. Dabney Decl. ¶ 21; Léger Decl. ¶¶ 3-5, 10, 13-15; Pinto Decl. ¶¶ 6, 14, 19-22; Rader Decl. ¶¶ 6-10. They work for the protection and restoration of conservation values on public lands not only for the intrinsic environmental value of intact ecosystems, but also for the public health and community benefits resilient ecosystems provide in the forms of clean air, pure water, physical exercise, and cultural resource protection. Joyce Decl. ¶¶ 5-6, 10-12; Krupp ¶¶ 3-5; Léger Decl. ¶¶ 3-5; McKinnon Decl. ¶¶ 3-5; Pinto Decl. ¶¶ 3, 6, 14, 19-22; Rader Decl. ¶¶ 6-10; Straight Decl. ¶ 5; Moderow Decl. ¶ 18-19; Dabney Decl. ¶ 26. Northern Center Movants and their members will benefit from the Public Lands Rule's requirement that Indigenous Knowledge be considered in decisions affecting public lands. Pinto Decl. ¶ 16; Rader Decl. ¶¶ 14, 17. They derive inspiration from intact public lands for their livelihoods and economic pursuits and will benefit from BLM's implementation of the Rule's tools to protect and restore intact landscapes. *See, e.g.*, DeAngelis Decl. ¶¶ 2, 5, 14 ("I rely on wild public lands for inspiration and as the subject of my photography and art. The rule will therefore benefit my livelihood in the coming years."). Northern Center Movants and their members use and enjoy Alaska's public lands for a wide variety of scientific, recreational, and subsistence uses. Moderow Decl. ¶¶ 17-22; Dabney Decl. ¶¶ 25-31.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 12 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 12 of 25

Conservation is core to Northern Center Movants' organizational missions, which include: keeping Alaska's "globally important wildlands [] biologically diverse and productive, with abundant fish and wildlife that support vigorous subsistence traditions and an extraordinary, increasingly sustainable quality of life for Alaskans," Dabney Decl. ¶ 6; "galvaniz[ing] support to secure vital policies that protect and defend America's last great wild public lands and waters," Moderow Decl. ¶ 4; "restoration and preservation" of public lands and "ensur[ing] that the public land management agencies adhere to the laws that guide them," Straight Decl. ¶ 7; "protecting the lands, waters, and climate that species need to survive," McKinnon Decl. ¶ 4; working to ensure that the "protection of human health and the environment is the foundation of our state and federal laws." Léger Decl. ¶ 4; "advocat[ing] for development that is in harmony with the traditional Navajo philosophy of 'Hozhoji,' path to live in harmony," Pinto Decl. ¶ 6; "protect[ing] and restor[ing] the wildlife, wild places, wild rivers, and health of the American West," Krupp Decl. ¶ 3; "practic[ing] and promot[ing] the responsible use of the earth's ecosystems and resources," Joyce Decl. ¶ 5; and protecting the "water and air, public lands, rural character, and unique quality of life while embracing the diversity of our region's people, economy, and ecology," Rader Decl. ¶ 7.

Northern Center Movants have advanced these missions through decades of tireless advocacy for public lands conservation and restoration – especially to remedy the historical management imbalance that has resulted in the landscape-scale degradation the Public Lands Rule seeks to address. Dabney Decl. ¶¶ 6-7, 11-12, 16, 20-21; Joyce Decl.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 13 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 13 of 25

¶¶ 9, 12, 14; McKinnon Decl. ¶¶ 7-13; Krupp Decl. ¶¶ 7-11; Moderow Decl. ¶¶ 5, 9, 16; Rader Decl. ¶¶ 8, 13-14; Pinto Decl. ¶¶ 13-15; Straight Decl. ¶¶ 11-13, 15; Léger Decl. ¶ 5. Many groups formed to protect their communities' food, air, watersheds, cultural resources, and members' health from the impacts of development on neighboring BLM-managed public lands, and continue to organize against these direct threats as well as the legacy of degraded lands that impacts their communities. Léger Decl. ¶ 5; Pinto Decl. ¶ 6; Rader Decl. ¶ 7, 9-10. Many of Northern Center Movants and their members, especially those living adjacent to public lands used for extractive and consumptive purposes, have been impacted by the imbalance in public lands management and will benefit from BLM's implementation of the Public Lands Rule's tools, including the restoration and mitigation leasing program. Léger Decl. ¶ 14; Joyce Decl. ¶ 9; Rader ¶¶ 12, 19; Pinto Decl. ¶¶ 3, 6, 11, 14, 19, 21 ("The Public Lands Rule is also necessary to address the impacts of oil and gas development on local ecosystems. Implementation of the Rule will benefit local natives, including myself, who forage for wild plants and garden, as well as local ecosystems that I and others in my community enjoy for hiking, camping, cultural use, and recreation.")

Northern Center Movants and their members routinely advocate for BLM to consider their interests in specific policy, planning, and project decisions, and many have engaged in litigation against the agency to defend those interests. Dabney Decl. ¶¶ 10-20; Joyce Decl. ¶¶ 9, 12, 14; Moderow Decl. ¶¶ 7-14; McKinnon Decl. ¶¶ 7-12; Krupp Decl. ¶¶ 7-11;  Rader Decl. ¶¶ 13-14; Pinto Decl. ¶¶ 8-9; Straight Decl. ¶¶ 12, 13, 15; Léger

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 14 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 14 of 25

Decl. ¶¶ 5. In 2022, several of the Northern Center Movants petitioned BLM to conduct a rulemaking to include FLMPA's conservation protections into its regulations, and many concepts in their petition appear in some form in the Public Lands Rule. Joyce Decl. ¶ 8; Krupp Decl. ¶ 8; Léger Decl. ¶ 9; McKinnon Decl. ¶ 7; Rader Decl. ¶ 11.

The Public Lands Rule's recognition of BLM's authority and responsibility to manage public lands for conservation holds great promise for Northern Center Movants to advance their respective missions. Pinto Decl. ¶¶ 12, 14; Straight Decl. ¶¶ 10-11; Rader Decl. ¶¶ 13-14, 22; Joyce Decl. ¶¶ 15, 18; Moderow Decl. ¶¶ 5-6; Dabney Decl. ¶¶6-7, 21. For example, several of the Northern Center Movants advocate for increased protection of conservation values through the designation of ACECs and will benefit from the Public Lands Rule's guidelines for the consideration, designation, and management of ACECs. Rader Decl. ¶ 26; Joyce Decl. ¶¶ 12-13; McKinnon Decl. ¶ 19; Krupp Decl. ¶ 16; Moderow Decl. ¶ 14; Dabney Decl. ¶¶ 17-18. In Alaska, Northern Center Movants have consistently advocated for protection of public lands under BLM's mandates to protect sensitive resources in the Reserve and on BLM-managed lands across the state. Dabney Decl. ¶¶ 6-7, 10-20; Moderow Decl. ¶¶ 5, 7-14.

For all of these reasons, many of the Northern Center Movants and their members submitted extensive comments on the proposed Public Lands Rule. These comments urged BLM to strengthen the Rule to better implement the Rule's focus on ecosystem resilience and conservation of intact landscapes, and stressing BLM's duty to prevent permanent impairment and unnecessary or undue degradation. Joyce Decl. ¶ 15; Krupp

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 15 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 15 of 25

Decl. ¶ 12; Léger Decl. ¶ 12; McKinnon Decl. ¶ 14; Moderow Dec. ¶ 6; Rader Decl. ¶ 25. In fact, the Sierra Club was deeply engaged in educating the public about the Public Lands Rule, and nearly ten percent of the more than 215,000 comments BLM received during the rulemaking process were from Sierra Club members and supporters. Joyce Decl. ¶ 15. While BLM did not adopt all Northern Center Movants' suggestions, the final Public Lands Rule—especially BLM's emphasis on its responsibility under FLPMA to treat conservation as a use within the multiple use framework—is a significant step toward BLM advancing Northern Center Movants' interests in public lands conservation.

Northern Center Movants' specific interests and uses of public lands, described above, illustrate the diversity of uses that FLPMA requires BLM-managed public lands to support. Public lands are valued for far more than extractive development. If the Plaintiff's litigation challenging the Public Lands Rule and challenging BLM's long-standing authority to manage public lands for conservation is successful, the interests of Northern Center Movants and their members will be harmed.  These interests support intervention. *Citizens for Balanced Use*, 647 F.3d at 897–98 (interest requirement met where movants had an interest "in conserving and enjoying the wilderness character" of an area to which challenged land and recreation management regulations applied).

### C. An Adverse Ruling Will Impair Northern Center Movants' Ability to Protect Their Interests.

Rule 24(a)(2) only requires movants to demonstrate that an adverse decision "may as a practical matter impair or impede the applicant's ability to protect its interest." Fed.

R. Civ. P. 24(a)(2). This third element, impairment, is closely related to the second element required for intervention, that the applicant has a protectable interest.  Where a protectable interest is demonstrated, courts often find that the third element is also satisfied. *Cal. ex rel. Lockyer*, 450 F.3d at 442. The bar is not high, asking only "whether the [action] 'may' impair rights 'as a practical matter' rather than whether the [disposition] will 'necessarily' impair them." *United States*, 288 F.3d at 401 (quoting Fed. R. Civ. P. 24(a)(2)). In determining whether the action may impair an applicant's interests, courts look to the relief requested. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

This element is easily satisfied here. Northern Center Movants' and their members' interests are so intertwined with conserving public lands that an adverse ruling in this case may compromise their ability to advance their respective missions with respect to BLM-administered lands. The relief sought by the Plaintiff in this case could nullify, or at the very least significantly hinder, Federal Defendants' ability to conserve public lands for present and future generations. This result would cause significant harm to  Northern Center Movants' fundamental values, and their members. Dabney Decl. ¶¶ 23-25, 32-33; DeAngelis Decl. ¶ 15; Krupp Decl. ¶ 17; Léger Decl. ¶ 17; McKinnon Decl. ¶¶ 20-21; Moderow Decl. ¶¶ 24-28; Pinto Decl. ¶¶ 21, 23-24

Invalidating the Public Lands Rule would eliminate a suite of conservation tools that Northern Center Movants intend to use to advocate for overdue public lands protections. For example, the Public Lands Rule requires BLM to develop national land

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 17 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 17 of 25

health standards for achieving functioning watersheds, ecological processes, and improved water quality and habitat conditions. 43 C.F.R. § 6103.1. Northern Center Movants have a long history of advocating for the type of improved conditions these land health standards are designed to achieve. Absent the Public Lands Rule, they would not be able to use these benchmarks to press BLM to restore and manage public lands to meet these standards. 43 C.F.R. § 6103.1.1 (requiring BLM to manage public lands toward achieving land health standards); Joyce Decl. ¶ 7; Krupp Decl. ¶ 5; Léger Decl. ¶ 5; McKinnon Decl. ¶¶ 17-19; Pinto Decl. ¶ 6; Rader Decl. ¶ 8; Straight Decl. ¶ 5; Dabney Decl. ¶ 32; Moderow Decl. ¶ 24. A ruling in this litigation vacating the Public Lands Rule or constraining BLM's implementation of FLPMA's well-established conservation mandates would impair the Northern Center Movants' interests; this is sufficient to satisfy the third element of the intervention test.

Northern Center Movants have spent decades advocating for BLM to manage public lands in ways that promote their interests in safeguarding communities, fish and wildlife, and healthy ecosystems—values core to Northern Center Movants' missions and their members' interests. Joyce Decl. ¶¶ 9, 12, 14; McKinnon Decl. ¶¶ 7-13; Krupp Decl. ¶¶ 7-11; Rader Decl. ¶¶ 8, 13; Pinto Decl. ¶¶ 13-15; Straight Decl. ¶¶ 11-13, 15; Léger Decl. ¶ 5; Dabney Decl. ¶ 7; Moderow Decl. ¶¶ 5-7. The Public Lands Rule, once implemented, provides important tools to advance these goals. A decision by this Court to vacate, enjoin, set aside, or modify the Public Lands rule would remove or modify

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                                    Page 18 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 18 of 25

these tools and impair Northern Center Movants' ability to press for conservation and restoration of public lands.

### D. Northern Center Movants' Interests Are Not Adequately Represented by the Existing Parties.

To satisfy the fourth element, a movant need only show that representation may be inadequate; "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). In considering the adequacy of representation, courts consider whether an existing party "will undoubtedly make all of the intervenor's arguments," whether the party "is capable and willing to make such arguments," and "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion*, 713 F.2d at 528. The "tactical similarity" of the parties does not ensure adequate representation; courts instead compare the interests of the party with the interests of the applicant. *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992) (citation omitted); *see also Citizens for Balanced Use*, 647 F.3d at 899 (explaining the government's general representation of the public interest does not necessarily represent a particular group's interests despite sharing the same litigation posture). Questions about the adequacy of representation should be resolved "in favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011) (citation omitted).

Northern Center Movants readily satisfy this minimal burden because their interests are distinct from the Federal Defendants' interests in this litigation. Northern

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 19 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 19 of 25

Center Movants are a coalition of community, environmental, and public health organizations dedicated to conserving public lands for their irreplaceable cultural resources, wildlife habitat, recreational opportunities, clean air and water, and role in combating climate change. Conserving public lands is the Northern Center Movants' sole pertinent interest here, and they have a long history of advocating to advance this goal. Straight Decl. ¶¶ 5, 12-13, 15; McKinnon Decl. ¶¶ 7-12; Leger Decl. ¶¶ 7-10; Pinto Decl. ¶¶ 6-10; Krupp Decl. ¶¶ 7-11; Joyce Decl. ¶¶ 7-9; Rader Decl. ¶¶ 8-11; Moderow Decl. ¶¶ 5, 11, 15-16; Dabney Decl. ¶¶ 6-9, 20-12. These interests are distinct from, and often in tension with, BLM's broad mandate to represent and balance the competing interests of the public at large. Krupp Decl. ¶ 19; Pinto Decl. ¶ 25; Rader Decl. ¶ 27.

The distinction is magnified in this case. This litigation centers, in large part, on BLM's implementation of its multiple use mandate under FLPMA. FLPMA requires BLM consider and balance competing uses of public lands, including inconsistent uses such as conservation, grazing, and energy development. *See* 43 U.S.C. § 1702(c). Defendants, therefore, have different and divergent interests from Northern Center Movants, and the presumption of adequate representation does not apply. *Trbovich*, 404 U.S. at 538–39; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24.

Additionally, Northern Center Movants often disagree with BLM over its interpretation and implementation of FLPMA's multiple use mandate, particularly the appropriate balance among competing uses of public lands. Indeed, the vast majority of BLM-managed lands are currently designated as open to extractive development,

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene　　　　　　　　　　Page 20 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

demonstrating that BLM has historically created a management imbalance at the expense of conservation interests.[2] The Northern Center Movants have a history of contesting BLM management decisions authorizing resource extraction and other activities that degrade public lands, and advocating for a comprehensive framework for integrating conservation and climate considerations in BLM's land use planning process. Joyce Decl. ¶¶ 9, 12, 14; McKinnon Decl. ¶¶ 7-12; Krupp Decl. ¶¶ 7-11; Rader Decl. ¶ 13; Straight Decl. ¶¶ 12, 13, 15; Léger Decl. ¶ 5; Moderow Decl. ¶¶ 7-9, 14-15; Dabney Decl. ¶¶ 11-12, 14-17. This decades-long history is punctuated by litigation challenging BLM land use planning and permitting decisions. *See, e.g., N. Alaska Envtl. Ctr. v. U.S. Dep't of Interior*, 983 F.3d 1077 (9th Cir. 2020) (oil and gas lease sale); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 623 F.3d 633 (9th Cir. 2010) (land exchange with mining company); *Sierra Club v. Hodel*, 848 F.2d 1068 (10th Cir. 1988) (road improvements); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 422 F. Supp. 2d 1115, 1167–68 (N.D. Cal. 2006) (off-highway vehicle use); *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 555 F. Supp. 3d 739 (D. Alaska 2021) (oil and gas project); *WildEarth Guardians v. Bernhardt*, 501 F.Supp.3d 1192 (D.N.M. 2023) (oil and gas leasing instruction memorandum). This past and present adversarial relationship

---

[2] Report on the Federal Oil and Gas Leasing Program, Prepared in Response to Executive Order 14008, U.S. Dept. of the Interior (Nov. 2021), https://www.doi.gov/sites/doi.gov/files/report-on-the-federal-oil-and-gas-leasing-program-doi-eo-14008.pdf (last visited Sept. 15, 2024).

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 21 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 21 of 25

highlights Federal Defendants' and Northern Center Movants' divergent interests in the Public Lands Rule at issue here.

Moreover, in comments on the Public Lands Rule, Northern Center Movants pressed BLM to go further than it ultimately did to advance ecosystem resilience and conserve intact landscapes. Joyce Decl. ¶ 15; Krupp Decl. ¶ 12; Léger Decl. ¶ 12; McKinnon Decl. ¶ 14; Rader ¶ 25. While Federal Defendants and Northern Center Movants may presently have a shared goal of upholding the Rule, they come at this goal from unique standpoints. As a result, Northern Center Movants will potentially offer different arguments than Defendants and contribute distinct perspectives in this case. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24 (recognizing differences in interests are sufficient to support intervention and not requiring a specific showing that there will be differences in strategy). As a result, Northern Center Movants have sufficiently distinct interests to support intervention.

## II. THIS COURT SHOULD ALTERNATIVELY GRANT NORTHERN CENTER MOVANTS PERMISSIVE INTERVENTION.

If this Court determines Northern Center Movants do not satisfy the test for intervention as of right, this Court should grant them permissive intervention. Rule 24(b) permits intervention when: (1) a movant's claim or defense poses questions of law or fact in common with the existing action and (2) the motion is timely and will not delay the proceeding or prejudice the parties. Fed. R. Civ. P. 24(b)(1)(B), (3). The test for permissive intervention imposes an even lower burden on movants than the test for

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                Page 22 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 22 of 25

intervention as of right because it eliminates the requirements relating to interests and adequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1178–79, 1180. A court has broad discretion in granting permissive intervention and, like intervention as of right, permissive intervention should be liberally granted. *See id.* at 1110–11.

Northern Center Movants meet this standard. First, they intend to respond directly to the Plaintiff's challenges to the lawfulness of the Public Lands Rule—*i.e.*, they intend to assert defenses of law and fact in common with the existing action. Northern Center Movants' interests are in upholding BLM's legal obligations to conserve public lands and ensuring there is adequate mitigation to address the impacts of extractive and industrial uses. *See supra* Parts I.B, I.D. Northern Center Movants plan to assert defenses of law and fact consistent with that and the arguments at issue in this case. Additionally, for the reasons discussed above, this motion is timely and intervention will not prejudice any parties or cause a delay in the proceedings. *See supra* Part I.C. Accordingly, if the Court finds that any of the Northern Center Movant organizations do not satisfy the test for intervention as of right, permissive intervention is warranted.

CONCLUSION

For the foregoing reasons, Northern Center Movants respectfully request that the Court grant their motion to intervene as of right or, in the alternative, permissive intervention.

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 23 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 23 of 25

Respectfully submitted this 30th day of September, 2024.

/s/ Bridget Psarianos
Bridget Psarianos (AK Bar. No 1705025)
TRUSTEES FOR ALASKA

*Attorneys for Northern Alaska Environmental
Center and Alaska Wilderness League*

/s/ Barbara Chillcott
Barbara Chillcott (MT Bar No. 8078)
*(pro hac vice pending)*
David Woodsmall (OR Bar No. 240631)
*(pro hac vice pending)*
WESTERN ENVIRONMENTAL LAW CENTER

*Attorneys for Badlands Conservation Alliance,
Center for Biological Diversity, Citizens for a
Healthy Community, Diné Citizens Against
Ruining our Environment, San Juan Citizens
Alliance, Sierra Club, and WildEarth
Guardians*

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene                    Page 24 of 24
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 24 of 25

## CERTIFICATE OF SERVICE

I certify that on September 30, 2024, I caused a copy of Northern Alaska Environmental Center et al.'s MOTION TO INTERVENE, supporting documents, and [PROPOSED] ORDER to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case, all of whom are registered with the CM/ECF system.

/s/ Bridget Psarianos
Bridget Psarianos

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains 5,616 words, excluding the parts exempted by Local Civil Rule 7.4(a)(4).

/s/ Bridget Psarianos
Bridget Psarianos

N. Alaska Envtl. Ctr. et al.'s Mot. to Intervene
*State of Alaska v. Haaland*, Case No. 3:24-cv-00161-SLG

Case 3:24-cv-00161-SLG   Document 18   Filed 09/30/24   Page 25 of 25